**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**WALTER R. COLE, AND WIFE,**
**DOROTHY COLE**                                                    **PLAINTIFFS**

**v.**                                          **CIVIL ACTION NO.: 1:10CV183-SA-DAS**

**NEW HAMPSHIRE INSURANCE**                                          **DEFENDANT**

## MEMORANDUM OPINION

Presently before the Court is a Motion for Summary Judgment [36] filed by Defendant
New Hampshire Insurance Company. Also before the Court is a Motion to Continue [40] filed
by Plaintiffs. After reviewing the motions, response, rules, and authorities, the Court finds
that Defendant's motion should be granted and Plaintiffs' motion should be deemed moot.

## LEGAL AND FACTUAL BACKGROUND

This dispute invokes issues under the National Flood Insurance Act, as the Defendant,
New Hampshire Insurance Company, is a Write-Your-Own carrier participating in the United
States Government's National Flood Insurance Program. Before discussing the facts relevant
to this action, the Court first provides background information concerning the applicable law
governing the National Flood Insurance Program.

### *The National Flood Insurance Program*

Recognizing that private insurers were unlikely to provide adequate flood insurance
without some federal subsidy, Congress in 1968 created the National Flood Insurance Act
("NFIA"), codified at 42 U.S.C. §§ 4001-4129, to provide subsidized flood insurance through
private insurers. See 42 U.S.C. § 4001(b) ("[M]any factors have made it uneconomic for the

1

private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions"). Under the Act, the federal government provides flood insurance subsidies and local officials are required to adopt and enforce various management measures. See id. §§ 4002(b)(3), 4012(c), 4022; 44 C.F.R. §§ 60.2-60.7. The National Flood Insurance Program ("NFIP"), created by the Act, is administered by the Federal Emergency Management Agency ("FEMA") and supported by the federal treasury, which pays for claims that exceed the revenues collected by private insurers from flood insurance premiums. See Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 165 n.2 (3d Cir. 1998). Congress has authorized FEMA to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance." 42 U.S.C. § 4019. The resulting regulatory scheme is set out at 44 C.F.R. §§ 61.1-78.14.

Prior to the NFIA's enactment, "few insurance companies offered flood insurance because private insurers were unable to profitably underwrite flood insurance policies." C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 266 (3d Cir. 2004). In its "early years, the Program was administered under what is known as 'Part A' [or the 'Industry Program'] of the NFIA. A pool of private insurance companies issued policies and shared the underwriting risk, with financial assistance from the federal government." Id.; see also Downey v. State Farm Fire & Cas. Co., 266 F.3d 675, 678 (7th Cir. 2001) (citing 42 U.S.C. §§ 4051-4056). Under "Part B," known as the "Government Program," the government "run[s] the NFIP itself-offering federally underwritten policies-with the potential for administrative assistance from private insurers." Downey, 266 F.3d at 678 (citing 42 U.S.C.

§§ 4071-4072). "In 1977, the Secretary of Housing and Urban Development, who ran the NFIP at the time . . ., decided that the Industry Program was unworkable and ended it. He then implemented the Government Program, which has continued to the present." <u>Id.</u> at 678-79.

Pursuant to 42 U.S.C. § 4081(a), FEMA created the Write-Your-Own Program ("WYOP"), which allows private insurers, sometimes called "WYO companies," to issue and administer flood-risk policies under the Government Program. Although FEMA may issue policies directly under the Government Program,

> more than 90% are written by WYO companies. These private insurers may act as 'fiscal agents of the United States,' 42 U.S.C. § 4071(a)(1), but they are not general agents. Thus they must strictly enforce the provisions set out by FEMA and may vary the terms of a Policy only with the express written consent of the Federal Insurance Administrator. 44 C.F.R. § 61.4(b), 61.13(d) & (e), 62.23(c) & (d). In essence, the insurance companies serve as administrators for the federal program. It is the Government, not the companies, that pays the claims.

<u>C.E.R. 1988, Inc.</u>, 386 F.3d at 267; <u>see</u> <u>also</u> <u>Downey</u>, 266 F.3d at 679 (noting that under the Government Program, "although private insurers issue the policies, FEMA underwrites the risk. The insurance companies handle administrative business for FEMA by selling policies and processing claims but do little else"). Suits against the FEMA Director upon the disallowance of a claim are authorized by 42 U.S.C. § 4072, and "[b]y regulation, the WYO company [may be] sued in place of the FEMA director." <u>C.E.R. 1988, Inc.</u>, 386 F.3d at 267 n.4; <u>see</u> <u>also</u> <u>Downey</u>, 266 F.3d at 679 (citing 44 C.F.R § 62.23(d)).

*Factual Background*[1]

Plaintiffs commenced this suit in the County Court of Lowndes County on June 9, 2010, which Defendant thereafter removed to this Court on July 23, 2010. Defendant is acting as, and is sued in its capacity as, a WYO company. Plaintiffs contend that Defendant allegedly failed to properly adjust and pay their flood insurance claim in full for damages stemming from a flood that occurred on January 7, 2009. Plaintiffs also appear to raise extra-contractual claims for damages resulting from Defendant's handling of their flood claim.

Plaintiffs had a Standard Flood Insurance Policy ("SFIP") issued by Defendant that was in effect at the time at the alleged flood event forming the basis of this action. The policy had building limits under Coverage A of $18,000, and contents limits under Coverage B of $9,600.00. The full text of Plaintiffs' SFIP can be found at 44 C.F.R. Pt. 61, App. A(1).

When Plaintiffs originally purchased the property at issue under this action in 1968, the insured structure was a ground level cabin built on a slab. In 1988, Plaintiffs tore down the building and built a new elevated structure, which became their permanent residence sometime in 1991. Apparently, Plaintiffs failed to file a new application for flood insurance in 1989 to reflect and cover the new elevated structure. According to Defendants, and wholly uncontested by Plaintiffs, the Plaintiffs' flood carrier was not notified that the insured cabin was replaced with a new and separate elevated house. Due to this, the rating and premium owed for Plaintiffs' flood coverage was never changed to reflect the new elevated structure.

---

[1] The Court notes that Plaintiffs filed a four-page response to Defendant's summary judgment motion. In their memorandum in response, Plaintiffs did not dispute, or otherwise contest, the undisputed facts as set forth in detail in Defendant's motion. In fact, Plaintiffs barely respond to any portion of Defendant's motion.

Plaintiffs appear to have reported a claim to Defendant for damages to the property on or about January 7, 2009. Defendant assigned the claim to an independent adjuster to assist Plaintiffs with estimating the loss, in accordance with Article VII(J)(5), (7), and (8) of the SFIP. The independent adjuster determined that the property suffered some flood damage and also noted, apparently for the first time, that the insured property was actually an elevated structure. The adjuster then prepared a report and estimate, recommending payment of $15,107.81 under Coverage A for building and $1,011.38 under Coverage B for contends, for a total payment of $16,119.19.

On March 9, 2009, Plaintiffs signed a Proof of Loss form provided by the independent adjuster in the amount of $16,119.19. The independent adjuster's report and the signed proof of loss were then tendered to Defendant for verification of the claim pursuant to the regulations codified in 44 C.F.R. § 62.23(i)(2). During the administration of the flood claim, Defendant—again, apparently for the first time—learned that the Plaintiffs never informed them that they tore down the original insured structure in 1988 and built a new elevated structure in 1989. During this adjustment process, Defendant determined that Plaintiffs' SFIP had to be reformed. Defendant further determined that additional premiums were due for this reformed coverage, and that any claim for flood damage would be restricted pursuant to the policy provisions regarding property located below the lowest level of a post-FIRM[2] elevated structure as outlined in Article III(A)(8), (B)(3) of the SFIP. Defendant asserts that, pursuant to the rules and regulations governing the NFIP, the policy needed to be reformed to reflect

---

[2] The definition section of the SFIP states as follows, "23. Post-FIRM building. A building for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later."

that the Plaintiffs' insured property was actually an elevated post-FIRM structure and not a ground level cabin built on a slab. Given this, Defendant concluded that the policy needed reformation, that an additional premium would be due from Plaintiffs in order to keep their existing amount of coverage, and that any claim for damages stemming from the January 7, 2009 flood would be restricted pursuant to Article III(A)(8), (B)(3) of the SFIP.

On May 7, 2009, Defendant notified Plaintiffs, in writing, that in order to keep their existing coverage limits in place, the policy would need to be reformed to reflect that the insured property was actually a post-FIRM elevated structure, and that an additional premium would be needed to cover the corrected rating of the policy. Defendant offered Plaintiffs the option to deduct the additional premium owed from any amount Defendant might owe them for the flood loss. The following day, on May 8, 2009, Plaintiffs signed the agreement to reform the policy and deduct the additional premium owed of $787.00 from any amount due to them on the claim. Defendant thus applied the applicable SFIP restrictions for recovery of benefits for property located below the lowest elevated level of a post-FIRM, elevated structure to Plaintiffs' flood claim, which reduced the amount of recoverable flood benefits under the reformed policy to $4,743.23 under Coverage A for the building, and $0 for the contents.

Subsequently, on May 14, 2009, Defendant denied all or part of Plaintiffs' claim for all non-covered items located below the lowest elevated floor of Plaintiffs' post-FIRM, elevated building pursuant to the SFIP. In turn, and in keeping with the agreement with Plaintiffs to reform the policy and deduct the additional premium owed, Defendant issued payment of $3,956.23 to Plaintiffs. This payment included the $4,743.23 for Coverage A,

minus the $787.00 owed for the policy reformation. After this payment and the written denial of all non-covered items located below the lowest elevated floor of Plaintiffs' post-FIRM, elevated building, Defendant asserts that Plaintiffs' claim was closed without further payment because Plaintiffs' claim had been adjusted and all covered losses had been paid in full.

After this, Plaintiffs, through counsel, sent a letter to Defendant asking for an explanation of the claim. On May 20, 2009, Defendant—by written letter—again rejected Plaintiffs' original March 9, 2009 proof of loss that came prior to the reformation of the policy, explaining that the post-FIRM, elevated structure restrictions were applied and reduced the amount of damages recoverable. On May 27, 2009, Plaintiffs' counsel responded, threatening a lawsuit. Defendant responded through another letter, explaining once again how and why the policy was reformed and that the SFIP is a federal policy. On August 21, 2009, Plaintiffs, through counsel, advised Defendant that the claim should be submitted to mediation, arbitration, and/or an administrative hearing process. Defendant again responded, explained the reformation, and informed Plaintiffs that federal law allows an appeal of the decision to FEMA within sixty days.

Plaintiffs, acting through counsel, did not immediately appeal to FEMA. Instead, Plaintiffs authored another letter, on September 9, 2009, to Defendant stating, "PLEASE ACCEPT THIS AS OUR NOTICE OF ARBITRATION." To this letter, Defendant informed Plaintiffs that nowhere within the SFIP was there a clause for arbitration. Plaintiffs sent yet another letter, on October 22, 2009, again threatening suit. After Defendant responded in a similar fashion as before, Plaintiff filed a notice of appeal, by written letter, to FEMA concerning the denial of their flood loss claim. FEMA conducted an investigation and, on

March 8, 2010, FEMA reached a decision and "concur[ed] with New Hampshire that the property is a post-FIRM elevated with limitations in coverage."

As noted, on June 9, 2010, Plaintiffs filed suit in state court alleging that Defendant should have dispersed additional federal benefits to them under their SFIP for the January 7, 2009 flood loss claim. Plaintiffs specifically sued Defendant in an attempt to recover $11,000 in compensatory damages, plus $11,000 in punitive damages plus costs, attorneys fees, and interest. Plaintiffs' entire complaint disputes the claims handling by Defendant, and Plaintiffs seek to require Defendant to pay the denied additional federal funds. Defendant filed a motion for summary judgment, arguing it is entitled to judgment as a matter of law because: (1) Plaintiffs' claims were untimely filed and are time barred; (2) Plaintiffs filed suit in the wrong jurisdiction; (3) Plaintiffs failed to provide accurate information and statements to Defendant in violation of the SFIP; (4) Plaintiffs' claims are restricted pursuant to the SFIP; (5) Plaintiffs failed to comply with the conditions precedent to filing suit, including failing to file a supplemental proof of loss and documentation; and (6) Plaintiffs' state law claims related to how Plaintiffs' SFIP was adjusted by Defendant should be dismissed.

## LEGAL STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002); <u>SEC v. Recile</u>, 10 F.3d 1093, 1097 (5th Cir. 1997); <u>Little</u>, 37 F.3d at 1075.

## ANALYSIS AND DISCUSSION

The Court begins by analyzing whether or not it has subject-matter jurisdiction over this action. While Plaintiffs did not raise this concern, the Court is compelled to undertake a sua sponte independent analysis of the issue to satisfy that jurisdiction exists. <u>See, e.g.</u>, <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541, 106 S. Ct. 1326, 89 L. Ed. 2d 501

(1986). Defendant contends that this Court has *exclusive* jurisdiction under 42 U.S.C. § 4072. Yet, this conclusion is not certain.

Section 4072 states that when "the program is carried out as provided in [42 U.S.C. § 4071], the Director [of FEMA] shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance." The statute includes the following jurisdictional language:

> [U]pon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court . . . .

Id. Many courts addressing the jurisdictional issue have noted that the key question is whether an action against the Director's fiscal agent (i.e., the WYO company) is "an action against the Director" under § 4072.

In Van Holt, the Third Circuit held that § 4072 creates subject-matter jurisdiction for claims against WYO insurance companies. 163 F.3d at 167. Accepting the arguments of the United States as amicus curiae, see id. at 166, the court noted "several reasons" for finding a suit against a WYO company to be the "functional equivalent of a suit against FEMA":

> First, a WYO company is a fiscal agent of the United States. 42 U.S.C. § 4071(a)(1). Second, FEMA regulations require a WYO company to defend claims but assure that FEMA will reimburse the WYO company for defense costs. 44 C.F.R. § 62.23(i)(6). Third, an insured's flood insurance claims are ultimately paid by FEMA. After a WYO company depletes its net premium income, FEMA reimburses the company for the company's claims payments. 44 C.F.R. Pt. 62, App. A, Art. IV(A). When a WYO company's proceeds from insurance premiums exceeds its current expenditures, it must pay the excess proceeds to the [Flood Insurance Administration]. 44 C.F.R. Pt. 62, App. A., Art. VII(B). Although a WYO company collects premiums and disburses

claims, only FEMA bears the risk under the flood insurance program. Thus, a lawsuit against a WYO company is, in reality, a suit against FEMA.

Id. at 166-67 (citation omitted). The court further noted the anomalous results of reading § 4072 as limited to suits against the Director:

> Because FEMA bears the risk and financial responsibility regardless of whether the lawsuit formally names FEMA or a WYO company as the defendant, it would make little sense for Congress to have intended to create original exclusive jurisdiction for suits against FEMA but not for suits in which FEMA's fiscal agent is the nominal defendant.

Id. at 167. Therefore, the court concluded that § 4072 "vests the district courts with original exclusive jurisdiction over suits by claimants against WYO companies." Id. The Sixth Circuit adopted the reasoning of Van Holt in Gibson v. Am. Bankers Ins. Co., 289 F.3d 943, 946-47 (6th Cir. 2002).

In Downey, the Seventh Circuit took a different view of whether 42 U.S.C. § 4072 creates jurisdiction over suits of this kind. 266 F.3d at 679. The court noted that § 4072 grants "original exclusive jurisdiction" in the district court for actions "against the Director" of FEMA, not WYO companies. Id. "Section 4072 does not mention the [WYO company] or indicate that anyone other than the Director may be sued under this grant of jurisdiction." Id. Acknowledging that the Third Circuit's observation that a suit against a WYO company is the functional equivalent of a suit against the Director was "not without force," id. at 679, the Seventh Circuit concluded:

> Although a judgment against [the insurer] may come out of the federal treasury-creating a federal interest-the only litigants are in the private sector. Because we see no good reason to disregard not only the identity of the litigants but also the fact that § 4072 is limited to suits against the Director, we decline to adopt Van Holt's reasoning.

Id. at 680.

After <u>Downey</u>, the Second Circuit thoroughly addressed the issue in <u>Palmieri v.</u> <u>Allstate Insurance Company</u>, 445 F.3d 179 (2d Cir. 2006). In an opinion authored by then-Second Circuit Judge Sotomayor, the Second Circuit joined the Third and Sixth Circuits in holding that § 4072 gives rise to jurisdiction over claims against WYO companies. <u>Id.</u> at 187. The Second Circuit noted that it agreed with the Seventh Circuit that § 4072 does not expressly indicate that anyone other than the Director may be sued. <u>Id.</u> at 186.  Yet, as the Second Circuit aptly noted,

> The ambiguity in § 4072 lies not in the word "Director," however, but in the word "against," which could mean either "having as defendant" or "opposed to." Of course, this suit is "against" the director in the colloquial sense, because it will draw down the federal financial resources he manages. Given this ambiguity, we look to the statutory context and purpose. <u>See</u> <u>Auburn</u> <u>Hous. Auth. v. Martinez</u>, 277 F.3d 138, 144 (2d Cir.2002) ("[T]he preferred meaning of a statutory provision is one that is consonant with the rest of the statute"). We conclude that a broader reading of the statute is appropriate as to suits against WYO companies because a suit against the Director's fiscal agent, for which the federal government bears financial responsibility, is in practical terms a suit "against" the Director.

> To hold that a suit against a WYO company is not a suit "against the Director" would be to ignore the structure of the NFIA, under which insurance companies act on behalf of the federal government, and the purpose of the Government Program, which is to ensure that private companies may "serve as administrators for the federal program." <u>C.E.R. 1988</u>, 386 F.3d at 267. The federal government exercises control over the terms of NFIA contracts; private insurers "must strictly enforce the provisions set out by FEMA and may vary the terms of a Policy only with the express written consent of the Federal Insurance Administrator." <u>Id.</u> at 267 (citing 44 C.F.R. §§ 61.4(b), 61.13(d)-(e), 62.23(c)-(d)). We see no reason to read the phrase "against the Director" to allow suits against the government agency managed by the Director, but not against the companies that manage the agency's NFIA liability under the government's supervision.

<u>Id.</u>  The Second Circuit continued its rationale, further explaining that,

> The general design of the Act also evidences an intent to ensure that claims involving the programs it creates are heard in the federal courts. Section 4053,

which applied to the now-defunct Industry Program, vested exclusive jurisdiction in the federal courts over any action brought by an insured against a pool of private insurers. See 42 U.S.C. § 4053. Section 4072 similarly provides for exclusive jurisdiction in the federal courts over any action brought by an insured "against the Director." Id. § 4072. The statutory framework thus indicates not only that private insurers are to act as fiscal agents of the government in administering the federal program, but also that all claims for benefits under an NFIA policy, whether issued as part of the Industry Program or the Government Program and whether sought from a private insurer or the government, are to be litigated exclusively in federal court.

Id.; see also Barefield v. State Farm & Cas. Co., 296 F. Supp. 2d 741 (S.D. Tex. 2003) (finding exclusive jurisdiction to exist under § 4072 and stating that, "[i]n reaching its conclusion, the[e] Court [ ] considered the hypothetical resolution of this issue in the Fifth Circuit . . . [and] feels that the Fifth Circuit would adopt the reasoning of the Sixth and Third Circuits with regard to section 4072"); Masoner v. First Comm. Ins. Co., 81 F. Supp. 2d 1052, 1056 (D. Id. 2000) (finding exclusive jurisdiction and noting that "FEMA itself takes the position that § 4072 applies to suits against WYO companies"); Webb v. Aetna Ins. Co., 1997 WL 433500 (E.D. La. July 31, 1997) (holding that § 4072 vests the federal courts with exclusive jurisdiction and noting that the fact that FEMA, via the SFIP, also requires that a claimant "must" file suit in the appropriate federal court).[3]

While this Court finds the Second Circuit's reasoning quite persuasive, the Court need not decide whether § 4072 invests exclusive jurisdiction in the federal courts in order to find

---

[3] The Webb court additionally noted that, "The WYO program is a creation not of Congress but of FEMA. See 48 Fed. Reg. 46, 789 (1983) (establishing the WYO program). Therefore, it is not surprising that the statute does not refer expressly to actions against WYO companies." 1997 WL 433500, at *3 n.4.

that the Court has subject-matter jurisdiction over this action.[4] Although they clearly do not agree on what statue creates it, either under 42 U.S.C. § 4072 or 28 U.S.C. § 1331, all of the circuit courts that have considered the issue agree that federal courts have jurisdiction over suits against WYO companies. See, e.g., Borden v. Allstate Insurance Co., 589 F.3d 168, 172 (5th Cir. 2009) (finding jurisdiction under § 1331, but never considering or addressing whether jurisdiction also exists under § 4072)[5]; Palmieri, 445 F.3d 179 (finding exclusive jurisdiction under § 4072 and declining to consider § 1331); Van Holt, 163 F.3d at 167 (finding exclusive jurisdiction under § 4072 and federal-question jurisdiction under § 1331); Gibson, 289 F.3d at 946-47 (finding jurisdiction under § 4072); Downey, 266 F.3d at 680 (finding that § 4072 did not create jurisdiction, but that § 1331 did); Newton v, Capital Assur. Co., Inc, 245 F.3d 1306, 1309 (11th Cir. 2001) (finding that jurisdiction existed under § 1331 and declining to consider whether it existed under § 4072); Studio Frames Ltd. v. Standard Fire Ins. Co., 369 F.3d 376, 379-80 (4th Cir. 2004) (same).

After satisfying its independent obligation to be sure it has jurisdiction to hear this action, the Court now turns to the Defendant's motion for summary judgment. However, the Court here need not go further than examining the timeliness of Plaintiffs' filing suit in order to grant Defendant's motion as it relates to claims handling under the SFIP. Because the flood insurance program "is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program

---

[4] One of the arguments set forth by Defendant in its summary judgment motion is that Plaintiff filed suit in the wrong jurisdiction, reasoning that the federal court has exclusive jurisdiction under § 4072. The Court declines to consider this argument; instead, the Court bases its decision to grant summary judgment on several other grounds raised by Defendant.

[5] The Borden court actually cited to both the Seventh Circuit's reasoning Downey as well as the Third Circuit's holding in Van Holt.

both in a supervisory capacity and financially," the Fifth Circuit has applied federal law to disputes over the coverage of flood insurance policies. <u>West v. Harris</u>, 573 F.2d 873, 881-82 (5th Cir. 1978). Under 42 U.S.C. § 4072, 44 C.F.R. § 62.22(a), and 44 C.F.R., Pt. 61, App.(A)(1), Art.(9)(r), any action to protest the denial of a flood claim made pursuant to a SFIP must be filed within one year following the claim denial. Specifically, § 4072 provides,

> In the event the program is carried out as provided in section 4071 of this title, the director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, *within one year after the date of mailing of notice of disallowance or partial disallowance* by the director, may institute an action against the director on such claims in the United States District Court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072 (emphasis added). There is similar language in the SFIP itself, which is found at 44 C.F.R. Pt. 61, App. (a)(1), Art. (9)(r) and provides in pertinent part:

> You may not sue us to recover money under this policy unless you have complied with all of the requirements of the policy. If you do sue, you must start the suit *within twelve months from the date we mailed you notice that we have denied your claim, or part of your claim*, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of the loss.

44 C.F.R. Pt 61, App. (a)(1), Art. (9)(r) (emphasis added). Along the same lines, it is significant that the provisions relating to time limitations set forth in the SFIP and § 4072 are duplicated in 44 C.F.R. § 62.22(a), which reads in pertinent part that,

> . . . the claimant *within one year after the date of mailing by the Federal Insurance Administration, the participating Write-Your-Own Company, or the servicing agent of the notice of disallowance or partial disallowance of the claim* may, pursuant to 42 U.S.C. 4072, institute an action on such claim against the insurer only in the U.S. District Court for the district in which the

insured property or the major portion thereof shall have been situated, without regard to the amount in controversy.

44 C.F.R. § 62.22(a) (emphasis added).

"The language in both the statute and the regulations clearly indicates that suit must be filed within twelve months of the denial of a party's claim." Webb v. Aetna Ins. Co., 1997 WL 433500, at *2 (E.D. La. July 31, 1997). Further, in Spence v. Omaha Indemnity Insurance Company, 996 F.2d 793, 795 (5th Cir. 1993), the Fifth Circuit held that the one year time limit contained in the SFIP is the "limitation period governing actions to recover against WYO companies under SFIPs." In Spence, an insured under a standard flood policy brought breach of contract and fraud claims against a private insurer, which had denied coverage based on policy exclusions. Id. at 794. The district court denied the defendant's motion for summary judgment on statute of limitations grounds. In reversing the district court's conclusions and finding that the one-year statute of limitations barred the action, the Fifth Circuit reasoned as follows,

> FEMA regulations promulgated under the National Flood Insurance Act establish the terms of the SFIP which WYO insurers may issue.[6] WYO companies may not alter those terms.[7] As Omaha points out, Article VIII(Q) of the SFIP requires the insured to institute any actions against the WYO insurer "to recover money under this policy" within one year from the date on which it

---

[6] 44 C.F.R. Pt. 61, App. A(1); 44 C.F.R. § 61.13(a) ("Each of the Standard Flood Insurance Policy forms included in appendix "A" hereto ... and by reference incorporated herein shall be incorporated into the Standard Flood Insurance Policy.").

[7] See 44 C.F.R. § 61.5(i) ("The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself."); id. § 61.13(a); id. § 61.13(d) ("The Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance Program, and no provision of the said documents shall be altered, varied, or waived other than through the issuance of an appropriate amendatory endorsement, approved by the Administrator as to form and substance for uniform use."); id. § 62.23(c) (flood insurance provided by WYO companies "shall be issued under the [SFIP]").

mailed notice of disallowance or partial disallowance. Because regulations provide that "all flood insurance made available under the Program is subject ... [t]o the terms and conditions of the Standard Flood Insurance Policy, which shall be promulgated by the Administrator,"[8] FEMA, acting well within its statutory rulemaking authority,[9] has established a one-year limitations period governing actions to recover against WYO companies under SFIPs.[10] That limitation clearly bars the Spences' contract claim.

Id. at 795 (footnotes included); see also, e.g., Cooks v. National Flood Insurance Program, 2009 WL 3645690, at *1 (E.D. La. Nov. 2, 2009) (finding lawsuit barred as it was filed one year after the claim was denied); Webb, 1997 WL 433500, at *2-*3 (finding that the one year limitation period barred plaintiff's action and relying on Spence to reject the argument that the one-year limitation commences to run only when the director of FEMA, the Federal Insurance Administrator, or the serving agent directly denies a claim); Parsons Footwear, Inc. v. Omaha Property and Casualty Co., 19 F. Supp. 2d 588, 591-92 (N.D. Va. 1998) (relying on Spence and finding plaintiffs failed to file suit within one year following Omaha's first denial via written letter of plaintiffs' claim).[11]

_____

[8] 44 C.F.R. § 61.4(a)(2).

[9] FEMA has authority to promulgate by regulation "general terms and conditions of insurability ..., including ... any ... terms and conditions relating to insurance coverage or exclusion which may be necessary to carry out the purposes of this chapter." 42 U.S.C. § 4013.

[10] Prior to the restructuring of the NFIP, 42 U.S.C. § 4053 provided for a one-year limitations period in actions on policies issued by private flood insurance pool participants. Although the present flood insurance scheme does not use the pool provided for in § 4053, that section indicates congressional intent to place a one year limitations period on actions under flood policies issued by private NFIP participants. Further, as FEMA, in effect, pays all claims under SFIPs through the letter of credit mechanism, 42 U.S.C. § 4072, establishing a one-year limitations period for actions directly against the agency on such policies, supports our conclusion.

[11] Plaintiffs make a puzzling argument in this action, contending that the statute of limitations either does not exist or is inapplicable. Plaintiffs contend that "Since neither party is a member of the United States House of Representatives nor the United States Senate, it is safe to say neither member is part of the United States Congress. Since neither is a member of

Here, on May 14, 2009, Defendant sent Plaintiffs a written denial letter.  Specifically, the letter stated, "*We are denying* all non-covered items located below the lowest elevated floor of your post-FIRM elevated building, pursuant to the Standard Flood Insurance Policy[.]"  The letter further stated, "If you do not agree with your insurer's *decision to deny your claim or any part of your claim*, Federal law allows you to appeal that decision within 60 days of the date of this denial letter."  Thus, May 14 is the date of mailing of the notice of "disallowance or partial disallowance" (or as stated in the SFIP notice that the claim has been "denied" in whole or part) for purposes of the running of the statute of limitations.  It is undisputed that Plaintiffs did not file their state court action until June 9, 2010.  Accordingly, suit was filed more than one year after the claim was denied.[12]  Thus, it is time barred, and

_____

Congress, neither has the power to set the statute of limitations for this action under the Constitution of the United States." Plaintiffs are correct in asserting that WYO companies, like Defendant, may not alter the terms of the SFIP, see Spence, 996 F.2d 793; however, Plaintiffs either miss the point concerning statute of limitations, or they do not understand that the National Flood Insurance Program, created by the National Flood Insurance Act, is a uniform *federal* program. The flood policy issued by Defendant is a Standard Flood Insurance Policy codified in federal law and issued by Congress. Neither the statute of limitations nor the actual policy was "created" or modified by Defendant.

[12] Even if the Court did not find May 14, 2009 to be the date that the claim was denied, the Plaintiffs' claim would still be time barred.  Defendant sent Plaintiffs *another* notice that the claim was being denied in whole or in part on May 20, 2010, which would still cause Plaintiffs' filing of suit to miss the one-year mark.

Furthermore, the Court notes that there is no issue in this action concerning whether the timely filing of a suit in state court tolls the statute of limitations, as the SFIP has an express requirement that suit be filed "in the United States District Court . . . ." 44 C.F.R. Pt. 61, App. (a)(1), Art. (9)(r).  That is, in many cases concerning SFIPs and statute of limitations, a state court action will have been timely filed, and either the removal to federal court by a defendant, or the filing of a second federal action by the plaintiff, will be untimely filed. In a case such as that, courts must resolve whether the timely filing of the suit in state court serves to toll the statute of limitations. See, e.g., Webb, 1997 WL 433500, at *3.  Here, unlike cases such as Webb, the actual filing in state court was beyond the one-year mark. Thus, no tolling issues arise.

Defendant is entitled to summary judgment as to Plaintiffs' contract claim concerning the SFIP.

However, even assuming arguendo that the claim was timely filed, the Court would nonetheless still grant summary judgment. "A NFIP participant cannot file a lawsuit seeking further federal benefits under the SFIP unless the participant can show prior compliance with **all** policy requirements." Richardson v. Am. Bankers. Ins. Co. of Fla., 279 F. App'x 295, 298 (5th Cir. 2008) (citing 44 C.F.R. pt. 61, app. A(1), art. VII(R) (emphasis added)). "In case of a flood loss to insured property, [the insured] must" satisfy several requirements before bringing a lawsuit. 44 C.F.R. pt. 61, app. A(1) art. VII(J). Since pay-outs implicate the federal treasury, provisions of the SFIP must be "strictly construed and enforced." Gowland v. Aetna, 143 F.3d 951, 954 (5th Cir. 1998) (citing Federal Crop. Ins. Corp. v. Merrill, 332 U.S. 380, 68 S. Ct. 1, 92 L. Ed. 10 (1947)); Wright v. Allstate Insurance Co., 415 F.3d 384, 954 (5th Cir. 2005); Forman v. Fed. Emergency Mgmt. Agency, 138 F.3d 384, 388 (5th Cir. 2005) ("Not even the temptations of a hard case will provide a basis for ordering recovery contrary to the terms of [a] regulation.") (citation omitted).

Foremost, the insured must provide a signed and sworn Proof of Loss within 60 days after the loss, "or within any extension authorized by FEMA." Forman v. FEMA, 138 F.3d 543, 545 (5th Cir. 1998). The SFIP additionally plainly requires a claimant to provide certain information in the proof loss, including "[s]pecifications of damaged buildings and detailed repair estimates," as well as an "inventory of damaged property showing the quantity, description, actual cash value, and amount of loss." 44 C.F.R. pt. 61, app. A(1) art. VII(J). More specifically, Article VII. J. 4., provides:

Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:

a.   The date and time of loss;

b.   A brief explanation of how the loss happened;

c.   Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

d.   Details of any other insurance that may cover the loss;

e.   Changes in title or occupancy of the covered property during the term of the policy;

f.   Specifications of damaged buildings and detailed repair estimates;

g.   Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;

h.   Details about who occupied any insured building at the time of loss and for what purpose; and

i.   The inventory of damaged personal property described in J.3. above.

44 C.F.R. pt. 61, app. A(1) art. VII. J. 4.

Here, Plaintiffs failed to file a properly executed and sworn Proof of Loss for the additional federal benefits they seek in this lawsuit under their SFIP. See, e.g., Kidd v. State Farm Fire & Casualty Co., 392 F. App'x 241, 244 (5th Cir. 2010) ("In cases constructing the terms of the SFIP, [the Fifth Circuit] ha[s] held that an insured must file a sworn proof of loss before seeking damages in excess of the amount paid by the insurer."); Wientjes v. Am. Bankers Ins. Co. of Fla., 339 F. App'x 483, 485 (5th Cir. 2009) ("The Wientjeses did not agree with American Bankers's adjustment, settlement, and payment of their claims. As such, they were required to submit a timely proof of loss as a prerequisite to filing suit.");

<u>Marseilles Homeowners Codo. Ass'n, Inc. v. Fid. Nat'l Ins. Co.</u>, 543 F.3d 1053, 1055-56 (5th Cir. 2008) (per curiam) (holding that the insured could not maintain a lawsuit for additional federal benefits because he had not submitted a sworn proof of loss); <u>Gowland</u>, 143 F.3d at 954 ("As the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced, we hold that an insured's failure to provide a complete, sworn proof of loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim."); 44 C.F.R. § 61, app. (A)(1), arts. VII(J), VII(R) (stating that an insured in the NFIP "may not sue us to recover money under this policy unless [it has] complied with all the requirements of the policy").

Along the same lines, Plaintiffs have also failed to submit the proper supporting documentation to the required Proof of Loss prior to filing suit.[13] <u>See, e.g.</u>, <u>Cooks</u>, 2009 WL 3645690, at *1 (granting summary judgment and holding that "the proof of loss submitted was deficient due to the lack of *any* supporting documentation prior to filing suit") (emphasis in original); <u>Markay v. Louisiana Citizens Fair Plan</u>, 2009 WL 23858 (E.D. La. 2009) (same); <u>Eichaker v. Fidelity Nat'l Prop. & Casualty Ins. Co.</u>, 2008 WL 2308959 (E.D. La. June 3, 2008) (same); <u>Trosclair v. State Farm Fire and Cas. Co.</u>, 2008 WL 5157715, at *3 (E.D. La. Dec. 9, 2008) (granting summary judgment because the claimant could "not point to any documents submitted along with, or attached to, the August 24, 2006 'Proof of Loss' form"); <u>Rouzan v. State Farm Fire and Cas. Co.</u>, 2008 WL 5169576 (E.D. La. Dec. 8, 2008); <u>Otallah</u>

_____

[13] Defendant spent several pages presenting its argument, and attached several documents to support its position, in its summary judgment motion concerning Plaintiffs' failure to submit a proper Proof of Loss as well as any supporting documentation. The Court notes that the Plaintiffs failed to present any documentation that would indicate it did submit such required documentation. In fact, Plaintiffs entirely failed to even respond to, much less contest or refute, Defendant's argument altogether.

v. State Farm Fire and Cas. Co., 2008 WL 3539667, at *4 (E.D. La. July 31, 2008) (granting summary judgment because "[t]here was no verifying documentation provided in conjunction with the POL, and the POL form by itself is insufficient to meet the burden imposed on insureds by the SFIP regulations."); Wells v. Fidelity Nat'l Prop. Ins. Co, 2008 WL 2781539, at *4 (E.D. La. July 14, 2008) ("Because plaintiff failed to comply with the SFIP requirement to file supporting documentation with her proof of loss prior to filing suit, Fidelity is entitled to summary judgment dismissing plaintiff's claim"). Further, even documents submitted after or in conjunction with filing suit – which the Court notes does not exist in this action – do not make up for the defect. See Richardson, 279 F. App'x at 298 ("The regulations say that a NFIP participant cannot file a lawsuit seeking further federal benefits under the SFIP unless the participant can show *prior* compliance with all of the policies requirements . . .") (emphasis added); Eichaker, 2008 WL 230895 at *4 (rejecting argument that "the SFIP does not require that . . . supporting documentation of losses be submitted prior to filing a lawsuit."); Wells, 2008 WL 2781539, at *4 ("Plaintiff's failure to file such documentation prior to filing suit is fatal to her claim."); see also Curole v. La. Citizens Prop. Ins. Corp., 2007 WL 625933, at *4 (E.D. La. Feb. 23, 2007) (reports attached to a summary judgment opposition memorandum was "untimely under the procedural requirements for filing a claim under Plaintiff's SFIP, which the court must strictly construe and enforce."); Trosclair, 2008 WL 5157715, at *3 ("Nor can the Mark Martin repair estimate and various receipts and invoices apparently submitted by Plaintiffs on or around August 13 and 15, 2008, i.e., during the course of this suit, cure the pre-suit deficiencies."). Given this, Defendant would be entitled to summary judgment even if Plaintiffs' action was not untimely filed, as "[u]nder

FEMA regulations, strict adherence is required to all terms of the SFIP." Marseilles, 542 F.3d at 1058.[14]

While Plaintiffs' three-page complaint is not specific or entirely clear as to whether Plaintiffs raise extra-contractual claims for damages stemming from Defendant's handling of Plaintiffs' flood claim, the Court nonetheless treats the complaint as raising such extra-contractual claims. In interpreting the NFIA, the Fifth Circuit has determined that the Act neither expressly nor impliedly provides for any federal extra-contractual relief against a WYO insurer. See Wright v. Allstate Ins. Co., 500 F.3d 390 (5th Cir. 2007) ("Wright II"). Furthermore, the Fifth Circuit held that state law extra-contractual claims in conjunction with a federal NFIA breach of contract claim are preempted by federal law. Wright v. Allstate Ins. Co., 415 F.3d 384 (5th Cir. 2005). ("Wright I").

---

[14] To go yet a step further, the Court also concludes that even if the suit was not time barred and Plaintiffs had submitted all of the required documentation, summary judgment would nevertheless be proper on Plaintiff's contract claim(s) under the SFIP. First, Article I (3) of the SFIP provides that the carrier "will pay the insured for direct physical loss by or from flood to your insured property if you 3) Have furnished accurate information and statements." Defendant here contends that Plaintiffs did not inform it that they tore down their original structure built on a slab in 1988, and built a new elevated structure in 1989, nor did they apply for a new SFIP to cover the newly built, elevated structure in 1989. Plaintiffs, again, failed to respond to both the factual contentions made and the evidence presented concerning this.

Furthermore, Defendant has presented substantial evidence that that Plaintiffs' claims under the SFIP are restricted pursuant to Article III (A)(8) and (B)(3). The property at issue is a post-FIRM elevated structure as defined by the SFIP. Plaintiffs do not contend otherwise, as Plaintiffs do not even respond to Defendant's argument as to this matter. Thus, certain restrictions are imposed under the SFIP. Specifically, pursuant to Article III (A)(8), the amount recoverable under the reformed policy for buildings located beneath the lowest elevated floor was $4,743 under Coverage A (i.e., building property). Similarly, for personal property under Coverage B, pursuant to Article III (B)(3), the amount recoverable was $0, as there were no contents items recoverable under the reformed SFIP. Plaintiffs have failed to produce *any* documentation that would even suggest that Defendant failed to pay them for contents items that should have been recoverable under the reformed SFIP.

In Wright, the plaintiff-homeowner filed suit against his WYO insurer claiming, inter alia, breach of contract and state law claims for fraud and negligent misrepresentation. Wright I, 415 F.3d at 386. The district court dismissed all of Wright's claims except the NFIA breach of contract claim, holding that the state law claims were preempted by federal law. Id. The Fifth Circuit upheld this ruling. Id. at 391; see also Dwyer v. Fid. Nat. Prop. & Cas. Ins. Co., 565 F.3d 284, 289 (5th Cir. 2009) (holding that WYO not liable for attorneys' fees under the Equal Access to Justice Act); Gallup v. Omaha Prop. & Cas. Ins. Co., 434 F.3d 341 (5th Cir. 2005) (reiterating its holding in Wright and finding that the NFIA authorized FEMA to promulgate regulation to preempt state law claims made against WYO insurance providers under NFIP). Wright further appealed the district court's decision to deny him the right to amend his complaint to include federal common law claims for fraud and negligent misrepresentation. See Wright II, 500 F.3d 390. The Fifth Circuit again upheld the district court's ruling, holding that no private causes of action for extra-contractual claims exist against a WYO insurer pursuant to the NFIA.[15] See id.

---

[15] The exact language of the standard flood insurance policy ("SFIP") issued under the NFIA reads: "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, and National Flood Insurance Act of 1968, as amended, and *Federal common law*." 44. C.F.R. Pt. 61, App. A(1), article IX. (emphasis added).

In Wright II, the Fifth Circuit undertook an in-depth analysis of both the statutory history of the NFIA and the Cort v. Ash factors to determine whether an express or implied remedy was available to the plaintiff. 500 F.3d 390 (5th Cir. 2007). In the interest of efficiency, the Fifth Circuit's findings can be succinctly summarized as follows: (1) the NFIA does not provide an express federal cause of action for extra-contractual claims because the statute only instructs that disputes arising from the NFIA should be governed by federal common law (i.e. in federal district courts), not governed by any judicially-created cause of action that had not previously been recognized; and (2) the NFIA does not provide an implied federal cause of action because Wright was not an especial beneficiary of the statute's

The district courts have followed the holdings in the <u>Wright</u> cases. <u>See, e.g.</u>, <u>Catchot v. Felsher</u>, 2007 WL 4557863, at *2 (S.D. Miss. Dec. 20, 2007) (citing to <u>Wright I</u> and <u>Wright II</u> and noting that "[s]tate law causes of action are preempted and Federal common law does not provide any additional remedy for negligence in the handling of a flood insurance claim"); <u>Dickerson v. State Farm Fire & Casualty Co.</u>, 2007 WL 1537631 (E.D. La. May 23, 2007)[16]; <u>Baker v. Allstate Ins. Co.</u>, 2007 WL 2407311 (E.D. La. Aug. 20, 2007).[17]  In fact, "most courts have consistently found that NFIA preempts state law claims that are based on the handling of SFIP claims." <u>Gibson</u>, 289 F.3d at  949; <u>see also</u> <u>Newton v. Capital Assurance Co., Inc.</u>, 245 F.3d 1306, 1309-10 (11th Cir. 2001) (holding that "no-interest rule prohibits awards of prejudgment interest against WYO companies"); <u>Van Holt</u>, 163 F.3d 161; <u>Spence</u>, 996 F.2d at 796[18]; <u>Houck v. State Farm Fire & Cas. Co.</u>, 194 F. Supp. 2d 452 (D.S.C. 2002);

_____

primary purpose nor was there any legislative intent to create a cause of action other than a breach of contract claim. <u>See</u> <u>Wright II</u>.

[16] In <u>Dickerson</u> (decided before <u>Wright II</u>, yet cited approvingly in <u>Dwyer v. Fid. Nat. Prop. & Cas. Ins. Co.</u>, 565 F.3d 284, 290 (5th Cir. 2009)), the court considered a motion to dismiss the plaintiff's federal common law extra-contractual claims, including "all damages occasioned by [State Farm's] misconduct, specific and general, as well as attorney's fees, costs, interests, [and] penalties." 2007 WL 1537631, at *1. The court ruled that none of the plaintiff's claims were recognizable federal common law theories, but were instead mislabeled state law claims. <u>Id.</u> at *2. The claims were thus preempted by federal law. <u>Id.</u>

[17] In <u>Baker</u>, the court held that the plaintiffs had impermissibly relabeled their state law claims as federal common law claims in an attempt to circumvent the preemption holding in <u>Wright</u>. 2007 WL 2407311, at *3. In dismissing the plaintiff's "federal common law" claims, the court, quoting <u>Dickerson</u>, interpreted the NFIA language to mean that disputes arising under it are to be resolved under federal law, not meant to create a new federal common law cause of action. <u>Baker</u>, 2007 WL 2407311, at *5.

[18] The Fifth Circuit in <u>Wright I</u> clarified the then-existing confusion surrounding the <u>Spence</u> holding as it relates to preemption.  The Fifth Circuit in <u>Wright I</u> noted as follows,

> Like others before it, the district court in this case interpreted our decisions in <u>West</u> and <u>Spence</u>, taken together, as holding that state law claims based on claims procurement were not preempted, while state law claims based on

Neill v. State Farm Fire & Cas. Co., 159 F. Supp. 2d 770 (E.D. Pa. 2000); Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 513 (D. N.J. 2000).

Here, to the extent Plaintiffs bring extra-contractual claims, the complaint does not specify whether they pursue such extra-contractual claims under a federal or state law theory. However, the Court finds this to be a moot point nonetheless. If Plaintiffs seek a state law remedy, their extra-contractual claims concerning claims handling are preempted under Wright I. See Wright I, 415 at 391; see also Dickerson, 2007 WL 1537631, at *2. If the Plaintiffs intend a federal theory of recovery, their claims analogize to the claims of the plaintiffs in Wright II and are therefore unrecognizable. See Wright II, 500 F.3d 390; see also Dickerson, 2007 WL 1537631, at *2.[19] Thus, Defendant is entitled to summary judgment as to any additional extra-contractual claims concerning claims handling that might be asserted in Plaintiffs' complaint.

### *Motion to Continue filed by Plaintiffs*

The Plaintiffs have filed a motion to continue "all matters pertaining to this case." Specifically, Plaintiffs request a continuance based solely on the fact that Plaintiffs' counsel is

---

claims adjustment were. See e.g. Messa v. Omaha Prop. & Cas. Ins. Co., 122 F.Supp.2d 513, 521 (D.N.J. 2000). Other courts, meanwhile, have read Spence to hold that state law tort claims against WYOs, whether based on procurement or claims adjustment, are not preempted by federal law. See Davis v. Travelers Pro. & Cas. Co., 96 F. Supp. 2d 995, 1003-04 (N.D.Cal. 2000).

A careful reading of Spence, however, reveals that Spence does not hold that state law tort claims are not preempted by the NFIA.

Wright I, 415 F.3d at 389-90. The Court notes that Plaintiffs' complaint does *not* allege any "tort" actions. Yet, even if it did, it appears that such a tort action would arise out of the SFIP contract.

[19] It should be noted yet again that Plaintiffs do not refute, or otherwise respond to, Defendant's authority or arguments on this issue.

a member of the Mississippi House of Representatives.  According to Plaintiffs, this Court should follow the directive of state courts and allow a continuance "until after the Mississippi legislature recesses on May 5, 2012."  The Court notes that it finds such reasoning for a continuance unpersuasive; yet, the Court need not actually address Plaintiffs' motion given the Court's grant of Defendant's summary judgment motion. Accordingly, this motion is dismissed as moot.

## **CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment is GRANTED.  Plaintiffs' motion to continue is MOOT.

So ordered on this, the  9th  day of __January_____, 2012.


**/s/   Sharion Aycock                   **
**UNITED STATES DISTRICT JUDGE**